# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA ATHENS DIVISION

KMC ACQUISITION CORPORATION:
d/b/a KIRKHILL MANUFACTURING :
COMPANY, :
                               :
      Plaintiff, :
                               :     **No. 3:15-CV-119 (CAR)**
v. :
                               :
ESCOE INDUSTRIAL MECHANICAL,:
INC., :
                               :
      Defendant. :
_____ :

## ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Plaintiff KMC Acquisition Corporation d/b/a Kirkhill Manufacturing Company's Motion for Partial Summary Judgment. Plaintiff seeks summary judgment as to Defendant Escoe Industrial Mechanical, Inc.'s liability for negligence and breach of contract regarding an incident at Plaintiff's rubber manufacturing facility in Athens, Georgia. The Court has thoroughly considered the relevant facts and applicable law, and, for the reasons explained below, **GRANTS** Plaintiff's Motion [Doc. 42].

## LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."[1]  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitles it to a judgment as a matter of law.[2]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[3]

The Court must view the facts, and any reasonable inferences drawn from those facts, in the light most favorable to the party opposing the motion.[4]  "The inferences, however, must be supported by the record, and a genuine dispute of material fact requires more than 'some metaphysical doubt as to the material facts.'"[5]  In cases where opposing parties tell different versions of the same events, and one is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."[6]  A disputed fact will preclude summary judgment

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[2] *Catrett*, 477 U.S. at 323 (internal quotation marks omitted).

[3] *See* Fed. R. Civ. P. 56(e); *see also Catrett*, 477 U.S. at 324.

[4] *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010); *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[5] *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) (quoting *Penley*, 605 F.3d at 848).

[6] *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

only "if the dispute might affect the outcome of the suit under the governing law."[7]

"The court may not resolve any material factual dispute, but must deny the motion and proceed to trial if it finds that such an issue exists."[8]

## BACKGROUND

Plaintiff filed this negligence and breach of contract action after an industrial rubber mixer Defendant was installing fell to the floor of Plaintiff's facility causing significant damage. Plaintiff contends Defendant is responsible for the damage because Defendant plainly should have known the mixer was too heavy for the equipment it used to lift it. Defendant counters it reasonably thought the equipment could sustain the weight of the mixer. The facts taken in the light most favorable to Defendant, as the non-moving party, are as follows.

In 2012, Plaintiff solicited bids from contractors to remove and replace an industrial rubber mixer that had fallen below standards at its Athens, Georgia rubber manufacturing facility. Defendant won the bid based on its representation it could perform the full turnkey operation, meaning, in addition to physically moving the mixers, it could disconnect and reconnect all the utilities. Defendant's project manager was Brandon Escoe. Plaintiff's project was the first project Escoe quoted or worked on

---

[7] *Penley*, 605 F.3d at 848.
[8] *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

as a project manager, and he had not previously worked on a job involving the removal and installation of a commercial mixer.[9]

Prior to bidding, Escoe visited Plaintiff's facility at least twice to do a walk-through and discuss the project with James Welch, Plaintiff's plant manager.[10] Welch told Escoe the beam installed in the facility had previously been used to change out mixers, but he was unsure if the chain fall[11] attached to the beam had previously been used; however, Welch said Escoe could use the chain fall to move the mixer if he wanted.[12] Welch told Escoe "he wanted to do the job as cheap as possible," and Plaintiff's current beam and chain fall system were built "specifically" for moving mixers.[13] However, Escoe testified Defendant was not required to use Plaintiff's equipment.[14]

On September 14, 2012, Defendant prepared a proposal for Plaintiff. The Proposal states:

> [Defendant] will supply labor, material and equipment to complete the following:
> Remove flooring and piping
> Remove old mixer and install new mixer
> Install flooring and re-install piping[.][15]

[9] Brandon Escoe's Dep., [Doc. 45-2] at p. 17-18, 23.
[10] *Id.* at 30-31; James Welch's Dep., [Doc. 45-1] at p. 45-46.
[11] The terms chain hoist and chain fall are used interchangeably by the parties and refer to the same equipment.
[12] James Welch's Dep., [Doc. 45-1] at p. 52-54.
[13] Brandon Escoe's Dep., [Doc. 45-2] at p. 30-31.
[14] *Id.* at 36.
[15] Escoe Contract, Ex. 4, [Doc. 42-4] at p. 1.

The Proposal also states: "BUYERS ACCEPTANCE OF THIS PROPOSAL SHALL CONSITUTE A VALID AND BINDING CONTRACT BETWEEN THE PARTIES AND ALL PRIOR PROPOSALS, DISCUSSIONS AND AGREEMENTS RESPECTING THE SUBJECT MATTER HEREOF ARE CANCELED."[16] Plaintiff's President Ed Reker executed the Proposal.[17] The Proposal contains no terms regarding Defendant using Plaintiff's equipment.

To remove the old mixer, Defendant used Plaintiff's already installed beam and chain hoist. It is undisputed both the beam and the chain hoist were clearly labeled they could support maximum weight of ten tons, or 20,000 pounds.[18] Defendant used new straps rated for at least 40,000 pounds to secure the old mixer to Plaintiff's chain hoist.[19] After securing the old mixer to Plaintiff's chain hoist,[20] Defendant lifted it eight

---

[16] *Id.* at 2 (emphasis in original).

[17] *Id.*

[18] The chain hoist "had 'permanently affixed and legible identification markings as prescribed by the manufacturer that indicate the recommended safe working load' of 10 tons." Pl.'s Engineering Report, Ex. 8, [Doc. 44-8] at p. 12. "The beam that was used is clearly marked with the load limit 10-tons." *Id. See also* Def.'s Resp. to Pl.'s.' Stmt. of Mat. Facts, [Doc. 52] at para. 16-17.

[19] Ray Myers testified Defendant's crew rigged the old mixer by putting four 40,000 pound, new donut chokers/straps around it and attaching this to the chain hoists. He also testified the mixer was way overrated on the rigging. Thurman "Ray" Myers' Dep., [Doc. 45-4] at p. 25-26. Escoe testified that the straps were each rated 24,00 pounds in a straight pull, but 42,000 pounds in a basket, and he thought total rating on the straps in the basket formation was 84,800 pounds. Brandon Escoe's Dep., [Doc. 45-2] at p. 51.

[20] Ray Myers testified he thought Defendant used two 20-ton chain hoists to move the mixer. However, Defendant does not dispute that it used one chain fall. *See* Def.'s Stmt. of Mat. Facts, [Doc. 51] at para. 11 (Defendant. . . hooked the straps to the chain fall."); Excerpt of Derrick Poulnot's Dep, Ex. 5, [Doc. 49-5] at p. 26-27 ("Q. Are there more than one overhead hoists at Kirkhill? A. No."). Defendant simply uses this testimony to rebut Plaintiff's allegation that Ray Myers knew the chain hoist was rated 10 tons. *See* Def.'s Brief in Opposition of Pl.'s Motion for Summary Judgment, [Doc. 49] at p. 8. Brandon Escoe testifies Defendant used one chain fall, as does Plaintiff's Engineering Expert. Brandon Escoe's Dep., [Doc. 45-2] at p. 52-53; Pl.'s Engineering Report, Ex. 8, [Doc. 44-8] at p. 16. Therefore, Myers' testimony is not sufficient to create a genuine issue of material fact as to Defendant's negligence or lack thereof.

to ten feet out of its hole and manually pushed it along the beam attached to the ceiling, until it could be lifted by a crane out of the building. The old mixer was removed without incident. However, Ray Myers—Defendant's lead man[21] who had 20 years of industry experience[22]—testified that when Defendant removed the top of the old mixer "those hoists had a hard time just lifting the top section, and that was the lighter part of the machine."[23] Myers testified he expressed his concerns to Escoe.[24]

Having successfully removed the old mixer, Defendant's crew proceeded to install the new mixer. There is a dispute regarding Escoe's knowledge of the new mixer's weight. The new mixer actually weighed approximately 34,400 pounds.[25] However, the scale on the crane Defendant used to put the mixer into the building showed the new mixer weighed 27,500 pounds.[26] Escoe testified Plaintiff's plant manager Welch told him the new mixer weighed right at 30,000 pounds.[27] Because the Court must view the facts in the light most favorable to Defendant for the purpose of summary judgment, the Court will assume Defendant reasonably believed the mixer weighed 27,500 pounds.

---

[21] Defendant disputes the characterization of Ray Myers as a "lead man." However, both Brandon Escoe and Ray Myers refer to him as such. Thurman "Ray" Myers' Dep., [Doc. 45-4] at p. 20; Brandon Escoe's Dep., [Doc. 45-2] at p. 26.
[22] Thurman "Ray" Myers' Dep., [Doc. 45-4] at p. 7-19.
[23] *Id.* at 39.
[24] *Id.*
[25] Noramex Proposal, Ex. 6, [Doc. 44-6] at p. 1.
[26] Brandon Escoe's Dep., [Doc. 45-2] at p. 53.
[27] *Id.*

Although the chain hoist was clearly labeled it was rated to lift ten tons (20,000 pounds), Escoe testified he thought Plaintiff's chain fall was rated 15 tons (30,000 pounds).[28] However, Escoe does not explain why he thought the chain hoist was rated higher than its label, and no other evidence offers any explanation.

After setting the new mixer into the building, Defendant's crew secured it to Plaintiff's chain hoist using the same straps used to remove the old mixer and moved the mixer through the facility using Plaintiff's chain hoist and beam.[29] When Defendant began lowering the new mixer into place, the chain hoist slipped several inches causing the straps to "explode," and the mixer fell five or six feet into the hole damaging the mixer and the facility.[30] The incident report Defendant created shortly after the incident stated the fall was due to the hoist slipping which caused the straps to break.[31] It is clear the mixer weighing 27,500 pounds (as believed by Defendant) was more than Plaintiff's chain fall, labeled for 20,000 pounds, indicated it could support.

Defendant removed the fallen mixer using two rented 20-ton chain hoists attached to Plaintiff's beam.[32] Once it was removed, Defendant shipped the mixer to its shop to be repaired.[33] Defendant hired an engineering consultant to inspect Plaintiff's beam to determine if it was safe to use to reinstall the mixer after the mixer was

---

[28] *Id.* at 52-53.
[29] *Id.* at 46-47.
[30] *Id.* at 49-50, 61; James Welch's Dep., [Doc. 45-1] at p. 114, 125.
[31] Brandon Escoe's Dep., [Doc. 45-2] at p. 60-61.
[32] *Id.* at 57.
[33] *Id.* at 66-69.

repaired.[34] The consultant determined the beam should not be used to lift the mixer without "substantial structural retrofits."[35] Plaintiff ultimately hired another company to install the mixer.[36]

For the purpose of this litigation, Plaintiff hired an engineering expert to investigate the incident. Plaintiff's expert opines "[t]he mixer fell as a direct result of Mr. Escoe's lack of understanding or care for the regulations or industry standards," such as an inaccurate understanding of the weight of the mixer, the rating of the equipment, and the effect of the straps' angles on their effectiveness.[37] Plaintiff filed suit in this Court pursuant to the Court's diversity jurisdiction seeking to recover damages to the mixer, the facility, and lost profits. Defendant filed a counterclaim seeking payment Defendant alleges Plaintiff owes it under the contract.

## DISCUSSION

Plaintiff brings six claims under Georgia law against Defendant: negligence, breach of contract, negligent performance of contract, gross negligence, attorney's fees, and punitive damages.[38] Plaintiff seeks summary judgment as to Defendant's liability on its negligence and breach of contract claims.[39]

---

[34] *Id*. at 71-72, 76.
[35] Def. Sheats Expert Rep., Ex. 10, [Doc. 44-10] at p. 3.
[36] Brandon Escoe's Dep., [Doc. 45-2] at p. 73-74.
[37] Pl.'s Engineering Report, Ex. 8, [Doc. 44-8] at p. 16-17.
[38] Because Plaintiff filed this action against Defendant pursuant to this Court's diversity jurisdiction, "the substantive law of the forum state applies." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982).
[39] Plaintiff asserts they are seeking summary judgment as to liability on all claims, however, Plaintiff only submits argument regarding its negligence and breach of contract claims.

## I. Negligence

Plaintiff's Complaint states both an ordinary negligence claim and a professional negligence claim. Although Plaintiff does not specify it is seeking a claim for professional negligence, whether a professional negligence claim is stated "is a question of law for the court, regardless of how the plaintiff categorizes it."[40] If "the allegations of negligence against a professional involve the exercise of professional skill and judgment within the professional's area of expertise, the action states professional negligence."[41] In other words, "[i]f a claim of negligence goes to the propriety of a professional decision rather than to the efficacy of conduct in the carrying out of a decision previously made, the claim sounds in professional malpractice."[42] "However, administrative, clerical, or routine acts demanding no special expertise fall in the realm of simple negligence."[43]

Here, Plaintiff challenges both Defendant's professional decision to use Plaintiff's chain hoist as well as Defendant's act of using the chain hoist itself. Thus, Plaintiff states a claim for professional negligence and a claim for simple negligence. To establish ordinary or professional negligence under Georgia law, Plaintiff must show "(1) a legal duty to conform to a standard of conduct; (2) a breach of this duty;

---

[40] *Hamilton-King v. HNTB Georgia, Inc.*, 311 Ga. App. 202, 203–04 (2011) (citing *Pattman v. Mann,* 307 Ga.App. 413, 415–416, 701 S.E.2d 232 (2010)).
[41] *Id.* at 204.
[42] *Id.*
[43] *Id.*

(3) a causal connection between the conduct and the resulting injury; and (4) damage to the plaintiff."[44] As explained below, no genuine issue of material fact exist as to Defendant's ordinary negligence and professional negligence, and thus Plaintiff is entitled to summary judgment in this case.

The Court recognizes that questions of negligence are generally questions for the jury and should only be decided by the court in "plain, palpable, and indisputable cases."[45] However, in this case, Defendant plainly breached both its duty exercise ordinary diligence and its duty to exercise the care and skill as is ordinarily employed by others of the same profession. Thus, its negligence is "plain, palpable, and indisputable,"[46] and this is the rare case where Plaintiff is entitled to summary judgment.

### a. Ordinary Negligence

Georgia law creates a duty independent of any contractual duty[47] which "imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance

---

[44] *Pattman v. Mann*, 307 Ga. App. 413, 417 (2010).
[45] *Parker v. Johnson*, 97 Ga. App. 261, 261 (1958); *see also Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 158 (2008).
[46] *Parker*, 97 Ga. App. at 261.
[47] "A defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of contract may give rise to a tort cause of action only if the defendant also breached an independent duty created by statute or common law." *Wallace v. State Farm Fire & Casualty Co.*, 247 Ga. App. 95, 98 (2000) (internal citations omitted).

of what he has undertaken."[48] Thus, in attempting to replace the mixer here, Defendant had a duty to exercise "the degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances."[49] "It is negligence to use an instrumentality. . . which the actor knows or should know to be so incompetent, inappropriate, or defective, that its use involves an unreasonable risk of harm to others."[50] "The most common test of negligence is whether the consequences of the alleged wrongful act are reasonably to be foreseen as injurious to others coming within the range of such acts."[51]

No expert testimony is needed for an ordinary person to find lifting an object weighing thousands of pounds with equipment not suitable for sustaining such weight creates an unreasonable risk of harm. Here, Defendant should have known using a chain hoist clearly labeled as rated for 20,000 pounds to lift a mixer weighing at least 27,500 pounds was so inappropriate that its use involved an unreasonable risk of harm. Additionally, it was reasonably foreseeable that lifting the mixer with an underrated chain hoist could injure Plaintiff's property.

Despite Defendant's arguments to the contrary, no evidence creates a fact issue from which a jury could conclude it was reasonable for Escoe to believe the chain fall

---

[48] "Georgia law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken." *Sutton,* 290 Ga. App. at 158 (citing *Blossman Gas Co. v. Williams,* 189 Ga. App. 195, 197 (1988)).

[49] O.C.G.A. § 51-1-2.

[50] Restatement (Second) of Torts § 307 (1965).

[51] *Underwood v. Select Tire, Inc.,* 296 Ga. App. 805, 809–10 (2009) (citing *Sims v. American Cas. Co.,* 131 Ga. App. 461, 468 (1974), *aff'd sub nom. Providence Washington Ins. Co. v. Sims,* 232 Ga. 787 (1974)).

was rated to support the mixer. Escoe did testify he thought Plaintiff's chain fall was rated to sustain 15 tons (30,000 pounds).[52] However, Defendant offers absolutely no evidence from which a jury could find this belief was reasonable. Defendant admits the chain fall was labeled by the manufacturer to have a safe working load limit of ten tons, or 20,000 pounds.[53] There is no evidence the label was obscured, illegible, or the chain hoist was mislabeled. Assuming it was reasonable for Escoe accept the mixer's weight as measured by the crane's scale at 27,500 pounds, the mixer was still overrated for a chain fall labeled for 20,000 pounds. The record contains no evidence or testimony that a chain hoist can support more weight than the weight for which it is labeled. On the contrary, Escoe testified there was no room for weight overage in performing this job.[54] Thus, the only reasonable conclusion in this case is Defendant's use of Plaintiff's chain hoist created an unreasonable risk of harm, thus breaching its duty to use ordinary care.

### b. *Professional Negligence*

Plaintiff also establishes it is entitled to summary judgment on its professional negligence claim. Because Defendant contractually agreed to undertake a professional and skilled service for Plaintiff, Georgia law "imposes upon building contractors and others performing skilled services the obligation to exercise a reasonable degree of

---

[52] Brandon Escoe's Dep., [Doc. 45-2] at p. at 52-53.
[53] Def.'s Resp. to Pl.'s.' Stmt. of Mat. Facts, [Doc. 52] at para. 17. The chain hoist "had 'permanently affixed and legible identification markings as prescribed by the manufacturer that indicate the recommended safe working load' of 10 tons." Pl.'s Engineering Report, Ex. 8, [Doc. 44-8] at p. 12.
[54] Brandon Escoe's Dep., [Doc. 45-2] at p. at 54.

care, skill, and ability, which is generally taken and considered to be such a degree of

care and skill as, under similar conditions and like surrounding circumstances, is

ordinarily employed by others of the same profession."[55] To prove negligence in

professional liability cases, expert testimony is generally needed to establish the

appropriate professional standards since contractors are required to "exercise that

degree of care and skill ordinarily employed by other contractors under similar

conditions and like circumstances."[56]

Plaintiff's engineering expert points to the *Safety Requirements for Rigging*

*Qualifications and Responsibilities in the Construction Industry*, promulgated by the

American National Standards Institute and the American Society of Safety Engineers

("ANSI/ASSE"), and regulations of the United States Occupational Safety and Health

Administration ("OSHA") to provide evidence of the standard of care in Defendant's

industry.[57] ANSI/ASSE's "Safety Requirements" warn contractors not to use

---

[55] *Howell v. Ayers*, 129 Ga. App. 899, 900 (1973) (internal citations omitted). *see also Fussell v. Carl E. Jones Dev. Co.*, 207 Ga. App. 521, 522 (1993) (internal citations omitted) ("[A] negligent construction claim arises not from a breach of contract claim but from breach of a duty implied by law to perform the work in accordance with industry standards. This cause of action arises in tort and exists independently of any claim for breach of contract.").

[56] *Bilt Rite of Augusta, Inc. v. Gardner*, 221 Ga. App. 817, 818 (1996).

[57] Although, OSHA regulations and ANSI/ASSE standards do not *create* Defendant's duty here, these standards and regulations illustrate a breach of the independent duty Defendant owed Plaintiff by providing evidence of the standard of care. "It is true that ANSI standards, as privately established guidelines, are admissible as illustrative of negligence. See *Luckie v. Piggly–Wiggly, etc.*, 173 Ga. App. 177, 178(1), 325 S.E.2d 844 (1984). As to the admissibility of the OSHA regulations in this regard, see *Gilbert v. CSX Transp.*, 197 Ga. App. 29, 30 (1990)." *Dupree v. Keller Indus., Inc.*, 199 Ga. App. 138, 142 (1991). *Gilbert* held that OSHA regulations could be used by an expert to determine his opinion of what was industry practice and custom. 197 Ga. App. at 30. *See also Long v. Amada Mfg. Am., Inc.*, No. CIV.A. 1:02-CV-1235, 2004 WL 5492705, at *14 (N.D. Ga. Mar. 31, 2004) ("While the experts may discuss the OSHA regulations

substandard or unsafe equipment,[58] and OSHA's regulations require workers not to load rigging equipment in excess of its manufacturer-indicated safe working load[59] and to inspect rigging equipment prior to each use.[60] Additionally, ANSI/ASSE suggests pre-planning for "Critical Operations," such as jobs like the one here, where "any power or manual mechanical device is used for hoisting, lifting, or winching is used within 15 percent of its rated capacity (85 percent of its maximum rated load/capacity)," or a job where "loads are moved across floors. . . of a permanent structure."[61] These suggestions include a page of pre-planning, pre-briefing, and suggested practice run considerations such as reviewing equipment needed and calculating total load weight.[62]

No evidence shows Defendant undertook any of these precautions.[63] Although Defendant performed walk-throughs prior to bidding on this project, no evidence shows Defendant inspected the equipment, calculated the total load weight, or performed practice runs.  Indeed, Defendant asserts it knew nothing regarding the

_____

and ANSI standards as illustrative of negligence and design defect, they must not suggest that non-compliance with the regulations and/or standards is conclusive as to liability.").

[58] AMERICAN NATIONAL STANDARD CONSTRUCTION AND DEMOLITION OPERATIONS, *Safety Requirements for Rigging Qualifications and Responsibilities in the Construction Industry*, ANSI/ASSE A10.42-2000 (R2010), § 3.1.1, Ex. 12 [Doc 42-12] at p. 13.

[59]  Rigging Equipment for Material Handling, 29 C.F.R. § 1926.251 (a)(2)(ii).

[60] 29 C.F.R. § 1926.251 (a)(1).

[61] ANSI/ASSE A10.42-2000 (R2010), §§ 3.2, 3.2.1, 3.2.11, Ex. 12, [Doc 42-12] at p. 13, 14.  Plaintiff's expert contends that if Defendant thought the mixer weighed 27,500 pounds and that the chain hoist's capacity was 30,000 pounds (15 tons), this ratio is 91.2% of the hoist's capacity, and therefore should have been deemed a Critical Operation.  Pl.'s Engineering Report, Ex. 8, [Doc. 44-8] at p. 16.

[62] ANSI/ASSE A10.42-2000 (R2010), Appendix B, Ex. 12, [Doc 42-12] at p. 20.

[63] Escoe testified Defendant's crew had weekly safety meetings, but there is no evidence as to what specific safety precautions Defendant undertook. Brandon Escoe's Dep., [Doc. 45-2] at p. 26.

actual weight of the mixer before beginning work.[64] Assuming the mixer weighed 27,500 pounds,[65] had he followed ANSI/ASSE industry standards, Defendant should have known Plaintiff's 20,000 pound chain fall was underrated for a 27,500-pound mixer. Moreover, Ray Myers, Defendant's lead man with 20-years industry experience, testified he noticed the chain hoist had trouble lifting the old mixer, and he expressed to Escoe his concerns that the chain hoist was not safe enough to hold the mixer.[66]

Defendant argues Plaintiff's permission for Defendant to use its beam and chain fall and Plaintiff's assurance its equipment had been successfully used in the past to change out mixers create a genuine issue of material fact as to its negligence. The Court is unpersuaded. It was unreasonable for Defendant to conclude the chain fall would sustain the weight of new mixer based solely on Plaintiff's statements that the beam and chain fall had successfully been used to change mixers in the past. No evidence reflects the weight of the mixers previously moved with the chain hoist, or that Defendant knew specifically when the chain hoist had last been used before it began work.[67] Additionally, no evidence suggests that a chain hoist's safety and efficiency remain

---

[64] Def.'s Brief in Opposition of Pl.'s Motion for Summary Judgment, [Doc. 49] at p. 4.
[65] Plaintiff's expert's report states that the crane's computerized scale could have been off by 21%, accounting for the discrepancy between 35,000 pounds and 27,500 pounds. Pl.'s Engineering Report, Ex. 8, [Doc. 44-8] at p. 12.
[66] Thurman "Ray" Myers' Dep., [Doc. 45-4] at p. 36-37, 39-40.
[67] Defendant points to the testimony of Derrick Poulnot to support its use of Plaintiff's chain fall. Poulnot testifies that the chain hoist was used in 2010 to change out a mixer, but that he had no discussions with any Escoe employees prior to Escoe beginning work. Excerpt of Derrick Poulnot's Dep., Ex. 5, [Doc. 49-5] at p. 2-4.

static over time. In fact, Myers testified he thought the chain hoist was worn out.[68]

Finally, no evidence indicates it was accepted industry practice to rely solely on the

statements of a customer in deciding what equipment to use. Once Defendant agreed to

undertake this job, Defendant assumed the duty to perform the skilled services required

to complete the job with a reasonable degree of care and skill ordinarily employed by

others of the same profession. In moving a 27,500-pound mixer with a 20,000-pound

chain hoist, Defendant plainly failed to fulfill this obligation.

Additionally, Defendant's argument that Plaintiff, as the owner of the chain fall,

had superior knowledge of its equipment and therefore had a duty to keep it fit for use

is also unpersuasive. "[T]he true basis of an owner's liability is the owner's superior

knowledge of the defect or hazard."[69] First, no evidence shows the chain fall had a

defect or created a hazard. Moreover, no evidence shows Plaintiff had superior

knowledge of the chain fall. Plaintiff did not use the chain fall in its day-to-day

operations. Indeed, Welch testified the chain fall was only ever used by contractors to

change out mixers.[70] Finally, Defendant's argument regarding how well its crew rigged

the mixer does not negate its negligence. No evidence explains how the care Defendant

took in strapping the mixer to the chain fall relieved the weight of the mixer on the

---

[68] Thurman "Ray" Myers' Dep., [Doc. 45-4] at p. 37.
[69] *Cooper Tire & Rubber Co. v. Merritt*, 271 Ga. App. 16, 19 (2004).
[70] James Welch's Dep., [Doc. 45-1] at p. 35-37.

chain fall and beam. Thus, the Court finds Defendant's professional negligence to be plain and indisputable in this case.

In addition to Defendant's indisputable breach of its duty owed to Plaintiff, no genuine issue of material fact exists to dispute that Defendant's actions (or lack thereof) caused Plaintiff's damages. Plaintiff's expert opines "[t]he mixer fell as a direct result of Mr. Escoe's lack of understanding or care for the regulations or industry standards," such as an inaccurate understanding of the weight of the mixer, the rating of the equipment, and the effect of the straps' angles on their effectiveness.[71] Defendant neither offers a countering expert opinion nor any other evidence creating any issue of fact as to another alternative theory of causation. Therefore Plaintiff's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim of negligence.[72]

## II. Breach of Contract

Plaintiff also contends Defendant is liable as a matter of law for breaching the parties' contract[73] by failing to supply equipment and install the mixer in a fit and workmanlike manner. To establish a breach of contract claim under Georgia law, Plaintiff must show "the (1) breach and the (2) resultant damages (3) to the party who

---

[71] Pl.'s Engineering Report, Ex. 8, [Doc. 44-8] at p. 16-17.

[72] Plaintiff also contends Defendant breached their duty to have qualified employees perform the job. The Court finds it is not clear and indisputable that Defendant's employees were not qualified. However, since Defendant was negligent as to using proper equipment, this second basis for liability is irrelevant.

[73] Defendant takes issue with Plaintiff's characterization of the September 14, 2012 Proposal as a "Contract;" however, Defendant's own language in the Proposal states "BUYERS ACCEPTANCE OF THIS PROPOSAL SHALL CONSITUTE A VALID AND BINDING CONTRACT BETWEEN THE PARTIES." Escoe Contract, Ex. 4, [Doc. 42-4] at p. 2 (emphasis in original document). Additionally, Defendant does not dispute a valid contract existed. Def.'s Stmt. of Mat. Facts, [Doc. 51] at p. 3 n.1.

has the right to complain about the contract being broken."[74] "A breach occurs if a contracting party repudiates or renounces liability under the contract, fails to perform the engagement as specified in the contract, or does some act that renders performance impossible."[75] Contract construction is a generally a question of law to be determined by the court; thus contract disputes are particularly well suited for summary adjudication.[76]

Georgia courts set forth three steps courts must follow to construct contracts:

The first step is to decide whether the language of the contract is clear and unambiguous. If so, the contract is enforced according to its plain terms, and the contract alone is looked to for meaning. Second, if the language of the contract is ambiguous in some respect, the rules of contract construction must be applied by the court to resolve the ambiguity. And finally, if ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.[77]

In other words, under Georgia law, if "the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning."[78] Georgia courts define ambiguity as "duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument,

---

[74] *UWork.com, Inc. v. Paragon Techs., Inc.,* 321 Ga. App. 584, 590 (2013) (internal citations omitted).

[75] *Id.*

[76] *Riverview Condo. Ass'n v. Ocwen Fed. Bank, FSB,* 285 Ga. App. 7, 9 (2007).

[77] *Bd. of Comm'rs of Crisp Cty. v. City Comm'rs of City of Cordele,* 315 Ga. App. 696, 699 (2012) (internal citations omitted). *See also Healthy-IT, LLC v. Agrawal,* 343 Ga. App. 660, 666–67 (2017).

[78] *Bulford v. Verizon Bus. Network Servs., Inc.,* 970 F. Supp. 2d 1363, 1371 (N.D. Ga. 2013) (internal citations omitted), *aff'd,* 564 F. App'x 449 (11th Cir. 2014).

and it also signifies being open to various interpretations."[79] A contract "or phrase is ambiguous when its meaning is uncertain and it may be fairly understood in more ways than one."[80]

Here, the contract contains no ambiguity. The contract states, "[Defendant] will supply labor, material and equipment to complete the following: [r]emove flooring and piping[,] [r]emove old mixer and install new mixer[,] [i]nstall flooring and re-install piping[.]"[81] The contract contains no provision requiring Defendant to use Plaintiff's chain fall, nor is there any language limiting what equipment Defendant will supply. The contract plainly requires Defendant to supply the equipment necessary to remove the old mixer and install the new one. Defendant breached this provision by failing "to perform the engagement as specified in the contract. . . ."[82] Defendant failed to provide equipment that allowed it to complete the installation of the mixer.

Defendant first argues the parties entered the contract with the understanding Defendant would use Plaintiff's chain fall and beam. The Court, however, is precluded from considering this evidence by the contract's merger clause. The contract specifically states "ALL PRIOR PROPOSALS, DISCUSSIONS AND AGREEMENTS

---

[79] 343 Ga. App. at 667(citations omitted).
[80] *Id*.
[81] Escoe Contract, Ex. 4, [Doc. 42-4] at p. 1.
[82] 321 Ga. App. at 590.

RESPECTING THE SUBJECT MATTER HEREOF ARE CANCELED."[83] "The purpose

of merger clauses is to preclude any unilateral modifications of a written contract

through evidence of pre-existing terms that were not incorporated into the written

contract."[84] Additionally,

> [w]here parties have reduced to writing a complete and certain
> agreement, the court will, in the absence of fraud, mistake, or accident,
> conclusively presume that the writing contains the entire contract, and
> parol evidence of prior or contemporaneous representations or statements
> is inadmissible to add to, take from, or vary a written contract.[85]

Here, the contract's merger clause clearly prevents the Court from considering any

evidence regarding the parties' understanding prior to the written contract.

Defendant next contends it is "industry standard" not to list a customer's built-

in equipment in the contract, and therefore its use of Plaintiff's chain fall was implied

as part of the contracts terms. Georgia statutory law on contract construction holds

that "[t]he custom of any business or trade shall be binding only when it is of such

universal practice as to justify the conclusion that it became, by implication, a part of

the contract. . . ."[86] Defendant presents no evidence not listing built-in equipment is

"industry standard." Escoe's testimony that when a customer has built-in equipment,

---

[83] Escoe Contract, Ex. 4, [Doc. 42-4] at p. 2 (emphasis in original).

[84] *Rome Healthcare LLC v. Peach Healthcare Sys., Inc.*, 264 Ga. App. 265, 271–72 (2003) (citing *Thomas v. Garrett*, 265 Ga. 395, 396 (1995)).

[85] 264 Ga. App. at 271–72 (citing OCGA § 13–2–2(1); *Andrews v. Skinner*, 158 Ga. App. 229, 231 (1981)).

[86] O.C.G.A. § 13–2–2(3). This provision excepts transactions covered by Title 11. This transaction is not covered by Title 11 as it is not a contract for goods, but for services.  *See* O.C.G.A. § 11–2–102; *Heart of Texas Dodge, Inc. v. Star Coach, LLC*, 255 Ga. App. 801, 802 (2002).

"there is no need for us to put that system or write it down in our quote,"[87] only concerns the typical standard for Defendant. Defendant presents no evidence its practice of not listing built-in equipment is universal in its industry.

Finally, even if the Court found the contract ambiguous, under Georgia's statutory rules of contract construction, "any ambiguity in language must be construed against the drafter of the contract,"[88] and thus, the provision would be construed against Defendant. Defendant had the opportunity to specify it would provide all the equipment other than Plaintiff's already installed beam and chain hoist when it wrote the contract, but it did not.

Based on the forgoing analysis, the Court finds Defendant breached the contract by failing to provide equipment that would allow Defendant to complete the installation of the mixer. Plaintiff's Motion for Summary Judgment is **GRANTED** as to its claim for breach of contract.

## CONCLUSION

In sum, Plaintiff's Motion for Summary Judgment [Doc. 42] is **GRANTED.** Plaintiff's Motion for Hearing [Doc. 56] is hereby **DENIED** as moot. Plaintiff's remaining claims will proceed to trial.

---

[87] Brandon Escoe's Dep., [Doc. 45-2] at p. 35.
[88] *Sun Am. Bank v. Fairfield Fin. Servs., Inc.*, 690 F. Supp. 2d 1342, 1361 (M.D. Ga. 2010) (citing O.C.G.A. § 13–2–2(5); *Asian Square Partners, L.P. v. Cuong Quynh Ly*, 238 Ga.App. 165, 168 (1999)).

**SO ORDERED,** this 28th day of March 2018.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT